N3N5secC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    SECURITIES AND EXCHANGE
     COMMISSION,
4
                    Plaintiff,              New York, N.Y.
5
              v.                            22 Civ. 4016 (LLS)
6
     GREGOIRE P. TOURNANT, et al.
7
                    Defendants.
8
     ------------------------------x
9
                                            March 23, 2023
10                                          3:10 p.m.
11   Before:
12                      HON. LOUIS L. STANTON,
13                                          U.S. District Judge
14
15                         APPEARANCES
16
17   SECURITIES AND EXCHANGE COMMISSION
     BY:  TIMOTHY K. HALLORAN
18        MELISSA J. ARMSTRONG
19
     LEVINE LEE LLP
20        Attorneys for Defendant Tournant
     BY:  SETH L. LEVINE
21        ALISON BONELLI
              -and-
22   ORRICK, HERRINGTON & SUTCLIFFE, LLP
     BY:  DANIEL R. ALONSO
23        OLIVIA A. RAUH
24
25
```

N3N5secC

1           (In the Jury Room)

2           THE COURT:  I have watched, with interest, in the law

3    journal, as your appearances before Judge Stein were recorded.

4    Did you pick it up?  Probably none of you read the law journal.

5    It was scheduling in this case, these conferences, but before

6    Judge Stein.

7           MR. LEVINE:  Are we in the wrong place, your Honor?

8           THE COURT:  No.  No.  And I think it's in today's law

9    journal, too, so you can consider I am the stand-in for Judge

10   Stein.

11          I have gone over your scheduling orders, I think it is

12   very sensible, but basically deferring anything really serious

13   until the end of the criminal case, and my understanding is

14   that the only difference between you on this point is that

15   Tournant would like to be able to start depositions about his

16   privilege issues before June 5.  I'm not sure what the reaction

17   to that is.

18          MR. HALLORAN:  Our reaction, simply put, there is

19   nothing particularly special about June 5.  We just want to

20   proceed under the normal rules of civil procedure, as opposed

21   to some expedited track.

22          THE COURT:  Give me some idea about what the

23   depositions are about.  Depositions aren't privilege issues, it

24   is usually kind of rare.

25          MR. HALLORAN:  Your Honor, so I represent the SEC.  I

N3N5secC

1     really can't answer that question because I have no idea.

2            THE COURT:  Well, then why don't you let your

3     adversary answer.

4            MR. LEVINE:  Thank you, your Honor, and thank you for

5     hearing us today, we appreciate it.

6            First, I think there are two differences, just so we

7     can, the first is just on the service of document requests and

8     subpoenas; we had asked to be able to serve those immediately

9     and we have already served one on the SEC.  The SEC would

10    prefer us to wait another three weeks to do that.  We don't see

11    any reason why we should wait to do those things and I can talk

12    about why.  So that's one other difference that I just wanted

13    to bring to the Court's attention.

14           With respect -- what we have done so far is we first

15    made an informal request to the SEC on the privilege matter.

16    We have also now sent them a very short formal document request

17    in advance of this conference.  The privilege issue is this:

18           Our client, Mr. Tournant, was represented personally

19    by Sullivan & Cromwell and Ropes & Gray, and also had

20    additional counsel.  The government -- United States Attorney's

21    office, along with the SEC as part of their investigation, were

22    provided privileged information from Mr. Tournant from

23    statements he made to his lawyers.  We have moved in the

24    criminal case for dismissal of the indictment and for a

25    Kastigar hearing, which the Circuit said governs --

N3N5secC

1          THE COURT:  What privilege is being asserted?

2          MR. LEVINE:  His attorney-client privilege, your

3    Honor.

4          Now, the standards and the rules are a little

5    different in a civil matter and while there is a lot of overlap

6    between what's happening on this issue in the criminal case and

7    here, there are actions independent by the SEC that we still

8    need to fully understand and there is a different standard, at

9    least in part, for a motion in this case to dismiss this case.

10    The Circuit --

11          THE COURT:  Why don't you ask Sullivan & Cromwell.

12          MR. LEVINE:  We have asked Sullivan & Cromwell,

13    they've given us a limited amount of information.  We have also

14    asked the government and Judge Swain, we have a hearing on

15    this, it is tentatively scheduled for April but what we don't

16    have and what we can't get is the materials from the SEC

17    including materials in which the SEC had communications with

18    the lawyers, with the government, and with others that we have

19    not been able to access.  But, more importantly, your Honor,

20    this is a separate case, and at this pointed out, taught us in

21    our last appearance, we have a right to pursue that discovery

22    and make a motion here based on the civil standards.  The

23    Circuit, not that long ago, has made clear that if

24    attorney-client confidences are used by a plaintiff in bringing

25    a case, that is a basis both for dismissal and for

N3N5secC

1    disqualification.  As my colleague mentioned to you in our last

2    appearance, we would like to pursue that, and given that it is

3    a privilege issue, we would like to pursue it promptly.

4           So, what we have done is we have asked -- we first

5    informally said to the SEC, we said, *Listen, just tell us who*

6    *we know who are the people involved in the communications and*

7    *give us the communications.*  They didn't do that.  So, in

8    advance of this hearing --

9           THE COURT:  When you have used several times the word

10   "materials."

11          MR. LEVINE:  Yes.

12          THE COURT:  What sort of materials?  Correspondence?

13          MR. LEVINE:  Correspondence, notes of meetings, and

14   communications.

15          So, for example, we know for certain that members of

16   the SEC investigative team, along with the United States

17   Attorney's office had meetings with the lawyers, and during

18   some of those meetings privileged information, in our view, was

19   disclosed.  What we don't know, though, is we know this in the

20   perspective --

21          THE COURT:  When you say the lawyers you mean

22   Sullivan & Cromwell?

23          MR. LEVINE:  Yes.  And we know that there were other

24   communications directly with the SEC that the government wasn't

25   involved in.  We know there are communications between the

N3N5secC

```
 1    government and the SEC in which information was shared but we

 2    don't know exactly what was shared and when.

 3              THE COURT:  But all sharing of information is not

 4    privileged.

 5              MR. LEVINE:  Our information, between attorney and his

 6    client, is privileged.  What we need to show now is how our

 7    privileged information was distributed throughout the

 8    government and throughout the SEC and was used in bringing this

 9    lawsuit.  And if we show that, there are a variety of different

10    standards here that apply.  But the Circuit has said, in a case

11    about a lawyer sharing information that was later used in a *qui*

12    *tam* action, affirmed dismissal of that case in the *Quest* case.

13              THE COURT:  This is not a *qui tam* action.

14              MR. LEVINE:  But the point is if the government -- we

15    have already filed a motion in the criminal case and we have a

16    motion here, that if this complaint was influenced by the use

17    of our client's privileged information, we have a right to

18    bring a motion to this Court and ask for remedy including

19    dismissal and disqualification.  And all we are trying to do

20    now is get the record of what was communicated to whom, and

21    when.  We have sent a very short document demand that says,

22    listen, just give us the communications.  We have some of them

23    but we don't have many of them.  And we also know --

24              THE COURT:  Well, you are getting way ahead of me on

25    things that seem to me rather peripheral.  They were given to
```

N3N5secC

1    the government by Sullivan & Cromwell at these meetings?

2              MR. LEVINE:  Yes.

3              THE COURT:  And Sullivan & Cromwell was representing

4    Tournant at that point?

5              MR. LEVINE:  Mr. Tournant was represented by

6    Sullivan & Cromwell when the statements -- many statements he

7    made, were made to them.  Subsequently, they terminated the

8    relationship with Mr. Tournant and we believe, outside of their

9    obligations, then used information from Mr. Tournant to argue

10   to the government that they should prosecute Mr. Tournant,

11   their former client, and allow Allianz, their other client, to

12   have more lenient treatment, which is what happened.

13             THE COURT:  So they had a conflict.

14             MR. LEVINE:  They did.  And in fact, we have filed

15   papers on this that they switched sides and essentially became

16   an advocate for the prosecution and regulatory action against

17   their own client and we think that that's inimitable to our

18   system.

19             THE COURT:  This story is before Judge Swain at the

20   moment?

21             MR. LEVINE:  In the criminal case it is.  And one of

22   the points that counsel has made is, *Well, it's before Judge*

23   *Swain*.  And our point, which is frankly the point that you

24   instructed us on last time, is there are two different cases,

25   this is a civil matter, there is a different set of questions

N3N5secC

1    and standards that the Circuit has applied in civil matters to

2    determine what happens if there has been an ethical breach and

3    what the standards are for dismissal.  Is there overlap?  Yes.

4    There is overlap here but the SEC's conduct, we do not have a

5    full picture of all that they did.  We know that their

6    investigation started more than a year before some of the

7    information was disclosed.  We know that they were working

8    hand-in-glove with the government here in what we believe was

9    obviously a joint investigation, another point we are

10   litigating.  And all we are saying is, listen, we have asked to

11   simply get the relevant communications and to have the relevant

12   folks identified so we can determine.

13           Now, in terms of the question you asked, which is why

14   do you need depositions, the answer is once we see what the

15   communications are and who had them, we may well need

16   depositions if things have to be clarified, but what we started

17   with is just show us the documents.  What do those documents

18   consist of?  Notes of conversations --

19           THE COURT:  Tell me something as you go along with the

20   history.  Is the recipient of the privileged information, that

21   is to say the SEC, under some restraint in using it?

22           MR. LEVINE:  I believe, your Honor, that the law is

23   clear that if a party receives --

24           THE COURT:  Start with yes, no, or I don't know.

25           MR. LEVINE:  Yes, your Honor.  Yes and yes.

N3N5secC

1              THE COURT:  Yes and yes.

2              MR. LEVINE:  Yes and yes.

3              THE COURT:  He is under a restraint.

4              MR. LEVINE:  Yes, your Honor.  Especially --

5              THE COURT:  And in all circumstances or only when a

6    restraint is articulated when the materials are delivered to

7    him?

8              MR. LEVINE:  Well, there may well be circumstances of

9    inadvertence and things which do not have a compelled

10   conclusion, and in fact the rules --

11             THE COURT:  That's always true --

12             MR. LEVINE:  But I would say --

13             THE COURT:  -- to be the governing principle.

14             MR. LEVINE:  The governing principle is that when a

15   plaintiff of any kind in a civil case uses attorney-client

16   information that has not been properly provided to them in a

17   case, it is subject to dismissal and there is also subject to

18   disqualification of counsel.  In criminal cases, the principle

19   that the Circuit has adopted is the Kastigar principle from

20   immunized testimony.  Kastigar is the case that says if you use

21   immunized testimony against someone, that case can be thrown

22   out.  In a case called *Schwermer*, the Second Circuit applied

23   that principle and said it applies equally when the government

24   invades the attorney-client privilege.  So you use the

25   standards for immunized testimony in a privilege case, and

1    there is at least some support in the civil law that the

2    Kastigar principle also applies to civil cases.  But, in the

3    most recent case that the Circuit addressed, this was a case

4    about an in-house lawyer who assisted a party in bringing a

5    case against his former employer, the Circuit affirmed, I

6    believe Judge Patterson's decision to dismiss the case and to

7    disqualify counsel because of the belief that the use of the

8    confidences and that switching of sides was inappropriate.  And

9    that is a case called *Quest*, which I would be happy to provide

10   to the Court.

11          So here, before we get to all of that, as I have said,

12   we have made a motion in the criminal case in which there are

13   clearly overlapping issues but they are not identical, and

14   there is factual information that we need for this case because

15   in this case the question is whether this Court should

16   potentially dismiss this complaint based on whether privileged

17   information was used improperly and that is a different

18   question than Judge Swain will answer.  But whatever the

19   ultimate answer to that is the first thing we need to do is

20   make sure we have all the facts and I do not have knowledge of

21   all of the communications between the relevant parties and what

22   information was shared.

23          THE COURT:  Do you claim or do you simply not know

24   whether Sullivan & Cromwell was acting -- was an agent for

25   Allianz in doing this or whether it was a volunteer?

N3N5secC

1          MR. LEVINE:  So, Sullivan & Cromwell was representing

2     Allianz in this matter, they were jointly representing Allianz

3     not only with my client but actually with the other defendants

4     that are not here today that were before you who have entered

5     agreements with the SEC.  Our view is that both, as a matter of

6     their engagement letter, as a matter of the laws of ethics, and

7     as a matter of other constitutional principles that have been

8     set out by courts before, that switching sides against one's

9     client --

10          THE COURT:  Are you working your way around to

11     answering my question?

12          MR. LEVINE:  I thought I did, your Honor.

13          THE COURT:  I was asking whether they were acting as

14     an agent for Allianz or as a volunteer.

15          MR. LEVINE:  Well, Allianz, they were representing

16     Allianz.  Now, the question you ask is a little complicated.

17     In our view they were acting as Allianz' lawyers to help

18     Allianz and they were motivated by the government's cooperation

19     and the SEC's cooperation policies which we have argued put

20     them in an impossible position.  They have said to the

21     government and to the SEC that Allianz, which is a massive

22     institution, was facing the, quote, corporate death penalty and

23     therefore, under those circumstances, they did everything they

24     possibly could to prevent the government from destroying the

25     company.  And, as part of that policy, part of that action,

N3N5secC

1    they decided to turn on their former client and reveal what we

2    believe were privileged information that was not appropriate.

3         Now, Judge Swain has briefing on this, she has

4    tentatively set a hearing, it is not certain that she is going

5    to have it but she set it for April 19th and 20th.  But because

6    in this case we have a separate complaint and there are facts

7    about the SEC that we do not know, and in fact the government

8    has taken the position in their papers that in fact they don't

9    want to even have imputed to them things that the SEC knows

10   because it is clear the SEC knew a lot about this and about the

11   representation.  I don't agree with the government's position

12   that they are any different but that's what the government has

13   suggested in their briefs.

14        So, all we are saying is --

15        THE COURT:  Who was the information given to?  What

16   you call the government or the SEC?

17        MR. LEVINE:  The information was provided to the

18   United States Attorney's office.  Other information was also

19   provided to the SEC.

20        THE COURT:  Other information?

21        MR. LEVINE:  There was privileged information provided

22   to both.

23        Here is the question.  I know about a certain number

24   of meetings.  The SEC was at some of them.  We also have

25   information that the SEC had other communications with S&C.  I

1    don't know when those occurred and I don't have a listing of

2    those.

3          So, I know they received privileged information.  I

4    also know that the SEC and the government coordinated on this

5    matter so that information was being passed back and forth.  I

6    cannot tell this Court --

7          THE COURT:  You assume it was being --

8          MR. LEVINE:  Well, I know that the government has made

9    representations in their brief about communications with the

10   SEC and I have the statements of the senior officials, from the

11   United States Attorney himself and head of enforcement for the

12   SEC who stood in St. Andrew's Plaza at the office and talked

13   about their cooperation.  And I also can tell you that in the

14   filings of these cases, the criminal and the civil happened the

15   same day, that even though some of the materials that had been

16   previously sealed by the government are referenced in the SEC's

17   papers.  And we have many instances where SEC folks and the

18   U.S. Attorney are sitting together in meetings because we have

19   notes from the government and we have some notes from the SEC

20   that list them.  And we also know that the government has

21   represented in their brief that after a particular event they

22   had communications with the SEC.

23         THE COURT:  They who?

24         MR. LEVINE:  The U.S. Attorney's office and the SEC.

25         THE COURT:  Why shouldn't they?

N3N5secC

1          MR. LEVINE:  There is no reason that they shouldn't

2     and we are not suggesting the fact that they had communications

3     is anything improper.  The question, though, is was privileged

4     information transferred and was that directly or indirectly

5     used against our client in building a case.

6          Again, the ultimate outcome in this case is something

7     that we haven't gotten to yet, but in the first instance we

8     would like to get the facts on the table and we have tried to

9     work through this first and formally --

10          THE COURT:  Well, the facts are the facts as they are,

11     they don't vary between one case and the other.  Whatever

12     happened, happened.  And it is only the consequences that may

13     be different in the two cases.

14          MR. LEVINE:  Yes, your Honor, the only difference

15     is --

16          THE COURT:  To what extent is the whole situation

17     about the facts going to be before Judge Swain?

18          MR. LEVINE:  Certainly the situation about the facts

19     with respect to the U.S. Attorney's office's conduct and our

20     argument that the SEC and the U.S. Attorney's office are one

21     prosecution team.  All of that is before Judge Swain.  However,

22     the difference is that as of right now we have made an

23     application to say that we think the government has an

24     obligation to give us what is in the SEC's files.  They said

25     they don't.  We believe, however in this case, the Court in the

N3N5secC

1    first instance we respectfully submit, needs to determine what

2    the SEC's role is in this and what information they received,

3    they could have received it from Sullivan & Cromwell, they

4    could have received it from the government, they could have

5    received in from the United States Postal Inspection Service

6    which was the investigative agency, and we know for certain

7    from an application made for a particular type of warrant that

8    the Postal Inspection Service got information directly from the

9    SEC.

10            So, in all of these Kastigar-like cases, the question

11   is what information was provided and what influence did it have

12   in the charging document in the case.  There is a segment of

13   this information which relates to the SEC, especially their

14   independent conduct we do not have.  And I will tell you I

15   cannot tell you right now how many conversations there was or

16   who talked to whom because I would be guessing, but I have a

17   record now where I can tell you that the three SEC lawyers who

18   are thanked in the press releases for doing their work were in

19   meetings with the United States Attorney's office, some of

20   those meetings had disclosure of what we believe is privileged

21   information.

22            So, all we are saying now is, and I am happy to show

23   you the very modest requests that we made, is for us to get the

24   remaining portions of the communications that the SEC has and

25   then, if we believe appropriate, we believe the law permits us

1    to make a motion on this to ask for appropriate remedies.  But

2    because it is a privilege issue we raised it last time and we

3    are trying to advance this and get it done.  I think there is a

4    fair question right now, before I have seen all of the

5    information, to precisely know how many depositions I need, if

6    any.  And so, what we have said to the SEC is, listen, the

7    materials and their communications here are clearly things that

8    should be discoverable in a civil case, let's get those on the

9    table and then we can figure out what to do next, but because

10   it could be a case-altering issue, let's just get it done now.

11   And I just don't see why we need to delay.

12        Now, we have served the document request which has six

13   requests, three of them are just for documents sufficient to

14   show so it is not a burdensome request, they've known about

15   this for a long time, and let's get that going.

16        Other than that issue, though, the only disagreement

17   we have is over one date which is whether or not we are

18   permitted to serve document requests and subpoenas now or we

19   have to wait until April 7th.  So, we have already served a

20   very modest document request.  We think that it would be in

21   everyone's interest for the SEC to respond to that as promptly

22   as possible and just provide us whatever additional notes and

23   materials they have.  If there are issues there we are happy to

24   work them out with them.  We don't think there is any burden

25   here.  And then we can decide how to address it in this case,

N3N5secC

```
1    your Honor.  But respectfully, the SEC's position, which

2    they've expressed to us in writing, that Judge Swain has this

3    issue, in part, I respect that and I don't want to waste any of

4    this Court's time, but I can represent to you that there

5    clearly is information that I don't have that relates to this

6    case and based on the law as I reviewed it, there are

7    differences, obviously, in the standards here.  I do think that

8    the common theme, though, is that we do not believe any

9    government agency of any kind, whether criminal agency or

10   regulatory civil enforcer, should be using privileged material

11   to build a case against someone and I think that there is good

12   authority for that in the civil law as there is in the criminal

13   law so we just want to get this on the table.

14        THE COURT:  Well, you put it on the table four times.

15   I think you can assume that it is there.

16        MR. LEVINE:  Thank you, your Honor.  I'm sorry for the

17   repetition.

18        THE COURT:  Not at all.

19        To what degree do you know what the information is and

20   to what degree are you in the dark about that, although the

21   circumstances are adverse.

22        MR. LEVINE:  We know for certain that a prep session

23   where our client was preparing for testimony with the SEC was

24   provided, verbatim, in several meetings.  The SEC was at some

25   of those meetings.  Other meetings the U.S. Attorney was at.
```

N3N5secC

1     We also know that the SEC frequently -- was asking the

2     government sometimes --

3             THE COURT:  My question was do you know what

4     information is that was conveyed.

5             MR. LEVINE:  Yes.

6             THE COURT:  How much of it is reflected in the

7     pleadings?

8             MR. LEVINE:  The information that was conveyed is

9     privileged so it is, what is reflected in the public pleadings,

10    is limited.  We have filed, under seal, notes that reflect what

11    was disclosed during the meetings with the government.  The SEC

12    was not -- there are portions of the meetings that we are aware

13    of the SEC was not at.  There is one meeting that some of

14    privileged information was disclosed the SEC was at.  What we

15    don't know is there is other indications that at times the SEC

16    said, *You told the U.S. Attorney's that, we would like to hear*

17    *that too.*  I don't know what other meetings occurred or if they

18    occurred.  We also know that there was frequent sharing of

19    information --

20            THE COURT:  Yes.

21            MR. LEVINE:  So the answer is I know what the

22    information was that we have been told because we have the

23    notes of it, but I cannot tell you the precise, all of what was

24    communicated to the SEC when, in full.  I know part of that

25    story but not the whole story.

N3N5secC

1          THE COURT:  What do you think of all that?

2          MR. HALLORAN:  Thank you, your Honor.

3          Counsel just made a number of allegations.

4          THE COURT:  I was here all afternoon, I heard it.

5          MR. HALLORAN:  Our first point is, fundamentally, we

6    dispute his allegations as they relate to the SEC.  We do not

7    believe that the SEC did anything inappropriate with respect to

8    any privileged information in this case.  That's important.

9          THE COURT:  Well, those are conclusions.  What do you

10   think the facts are?

11         MR. HALLORAN:  Your Honor, that is a great question.

12         I have asked defense counsel, in writing, I have said,

13   you have lobbed these broad allegations at us.  If you contend

14   that the Securities and Exchange Commission did something wrong

15   with respect to privileged information, please put that in

16   writing so that I can look into it and get back to you.  They

17   haven't done it.  They keep saying, *You used privileged*

18   *information,* to which my response is, *What privileged*

19   *information?  What are you referring to?  When do you think*

20   *this happened?  What do you think happened?  Who do you think*

21   *was involved?*  I have asked them for that information, they

22   won't tell me.

23         But, in any event, we do not dispute their ability

24   to --

25         THE COURT:  Did they tell me here this afternoon

N3N5secC

| | |
|---|---|
| 1 | anything that you hadn't heard before? |
| 2 | MR. HALLORAN:  No. |
| 3 | THE COURT:  You heard it all before. |
| 4 | MR. HALLORAN:  Pretty much.  It's all briefed in front |
| 5 | of Judge Swain.  I mean virtually everything he just said is in |
| 6 | a brief that is pending in front of Judge Swain right now. |
| 7 | THE COURT:  So I say what is your response? |
| 8 | MR. HALLORAN:  My response is, first, we dispute that |
| 9 | we did anything inappropriate with privileged information; and |
| 10 | second, we do not dispute his ability to serve document |
| 11 | requests.  He can serve requests under the rules and we will |
| 12 | respond under the rules.  He can request documents that he |
| 13 | thinks relate to this issue and we will respond, in due course, |
| 14 | under the federal rules. |
| 15 | THE COURT:  Why aren't you doing that? |
| 16 | MR. LEVINE:  I did.  I have sent, as I said, your |
| 17 | Honor, we already served a short document request.  What we |
| 18 | said to them was we would appreciate it if you would do this on |
| 19 | a more expedited basis because it is a small amount of |
| 20 | materials, and their response is no. |
| 21 | THE COURT:  Have you seen it? |
| 22 | MR. HALLORAN:  They served it two days ago. |
| 23 | THE COURT:  I see. |
| 24 | MR. HALLORAN:  Two days ago. |
| 25 | We have every intention of responding under the |

N3N5secC

1   federal rules, absolutely.  We intend to respond to the rules.

2   He served it two days ago.

3          THE COURT:  OK.

4          MR. LEVINE:  Your Honor, if I may just make the record

5   clear?

6          We had conversations about this issue.  We sent them a

7   letter on March 14th outlining what we wanted.  They then told

8   us a variety of things including it's meritless, they don't

9   know what our application is, and the entire thing is covered

10  by the motions before Judge Swain.  We then said, OK, we can't

11  work this out, so we served a short document request because it

12  was clear to us that we were not going to be able to work this

13  out.  Now all I am asking for is they've known about this for

14  months, we talked about it in the last conference.  Is there

15  really some reason that we can't -- that they're going to serve

16  responses in 30 days or objections?  Is there really not a way

17  we can't move this along a little more quickly?  Because it is

18  a privilege issue and we think it is of some moment.  That's

19  all we have asked for.  And at this point Mr. Halloran has not

20  suggested that he would do that and that is what we are asking

21  him to do.

22         MR. HALLORAN:  We absolutely will comply with our

23  obligations under the federal rules.  We believe those rules

24  presumptively apply.  This is a civil case governed by the

25  Federal Rules of Civil Procedure.  We intend to litigate under

N3N5secC

1   those rules.  We don't think there are special rules for this

2   defendant.

3          THE COURT:  By your calculation when do you owe him an

4   answer to the letter he gave you two days ago?

5          MR. HALLORAN:  The document requests two days ago?

6          THE COURT:  Whatever that letter said.

7          MR. HALLORAN:  They were actually formal document

8   requests.  We believe that the rules say 30 days.

9          And as your Honor may recall, this is the same party

10  that waited nine months to file an answer.  So they waited nine

11  months to answer the complaint, but now that they have

12  answered, they're in a huge hurry and everything has to happen

13  tomorrow.  If they wanted this information they could have

14  filed an answer seven months ago but they waited nine months to

15  answer and now they want discovery when they want it.  And our

16  position, very simply is, we think the rules should apply and

17  we will operate normally under the federal rules.

18         MS. ARMSTRONG:  Your Honor, if I may, the other piece

19  of this is the first time that Mr. Tournant's counsel came to

20  us with this issue we told them, you are raising some very

21  serious issues and we think it should all be done in writing,

22  very formally, with document requests, so that we can respond

23  with responses that lay out our privilege issues, that tell us,

24  that delineate specifically what you want and what we are going

25  to produce, so that when we come to you with any kind of

N3N5secC

1    dispute going forward you have a very clear record of what the

2    issues really are, rather than hearing about conversations or

3    allusions to allegations and things that are happening in

4    another court.

5         We think that proceeding under the Federal Rules of

6    Civil Procedure, in the ordinary course, is what is going to

7    allow the parties to properly tee issues up for you for future

8    consideration.

9         That's the essence of why we think we need to just

10   stick to the rules and just proceed in the ordinary course.  We

11   don't see a reason to carve out special issues because every

12   case presents -- most cases present special issues or issues

13   that might be dispositive if they were treated early.  We just

14   think let's treat like any other case because it is,

15   fundamentally at its core, as Mr. Halloran said.  It is a civil

16   case, it should proceed under the civil rules.

17        THE COURT:  What is the situation with respect to

18   Allianz at this point?

19        MS. ARMSTRONG:  They have settled with us.

20        THE COURT:  Oh, they settled.  It is a closed matter.

21        MS. ARMSTRONG:  A disclosed amount, yes.

22        MR. HALLORAN:  As to the company it is resolved.

23        THE COURT:  Publicly?

24        MR. HALLORAN:  Yes.

25        MS. ARMSTRONG:  Yes.

N3N5secC

1          THE COURT:  Has that resulted in a publication about

2    what you were informed?

3          MR. HALLORAN:  I'm not sure I understand the question.

4          THE COURT:  As a result of making your peace with

5    Allianz, haven't any privileged matters that were given to you

6    as a way of palliating their situation in the Allianz case,

7    aren't those now public?

8          MR. HALLORAN:  I'm not quite sure how to answer that

9    question.

10          I'm not aware of there having been a privilege problem

11    with respect to the company as we were settling with them.  If

12    there was such an issue, I'm not aware of it.  The first I

13    became aware of these allegations that you are hearing about

14    today is when defense counsel mentioned it.  I wasn't aware of

15    it prior to them making the allegation.

16          THE COURT:  Oh, so you didn't -- you are speaking for

17    the SEC and it didn't realize that the information being given

18    to it was privileged?  Is that what you say?

19          MR. HALLORAN:  I believe that is very much in dispute.

20    I believe there is very much a dispute about whether

21    information that went to the SEC was or wasn't privileged.  My

22    understanding is that that is something that is before Judge

23    Swain and Judge Swain is going to resolve it because there is

24    very hotly contested briefing on this point in her courtroom

25    and I understand it to be contested.

N3N5secC

```
1              THE COURT:  But if the Allianz matter is no longer

2      open as a litigating matter, shouldn't the information that

3      went from one party to another in that process now be

4      disclosed?

5              MR. HALLORAN:  If your Honor is asking -- are you

6      asking about information that was never privileged?

7              THE COURT:  I am asking about the things that

8      Sullivan & Cromwell gave you.

9              MR. HALLORAN:  Oh sure.  If Sullivan & Cromwell, for

10     example, sent an e-mail to the SEC, I would expect we would

11     produce that in discovery.

12             THE COURT:  And when is that going to be?

13             MR. HALLORAN:  We will respond under the rules and

14     then we will produce documents.

15             THE COURT:  And this is what he just asked two days

16     ago.  I see.  So you will be replying to that in April.

17             MS. ARMSTRONG:  Yes.

18             MR. HALLORAN:  Yes.  Under the rules we will respond.

19             I will just say -- and I don't want to get ahead of

20     ourselves, the request that he served we will have objections,

21     there are legitimate objections there but that should all be

22     teed up in writing so that you can address it at the

23     appropriate time on a complete record.

24             THE COURT:  Well, one of the questions I will be

25     interested in is, is there any continuing reason that
```

N3N5secC

1    information should be held confidential.

2            MR. HALLORAN:  I just want to make sure I am tracking

3    your question.  When you say that information, you mean

4    information that came from a law firm to the SEC?

5            THE COURT:  Yes.

6            MR. HALLORAN:  I wouldn't think it would be

7    privileged.

8            THE COURT:  Excuse me?

9            MR. HALLORAN:  If an outside law firm speaks to the

10   SEC, I don't think that information is privileged.

11           THE COURT:  Well, then it won't hurt to reveal it.

12           MR. HALLORAN:  I wouldn't think so.  I want to make

13   sure that we are on the same page.

14           THE COURT:  We are not on the same page because I'm

15   not talking about an outsider counsel, I am talking about

16   Sullivan & Cromwell representing Allianz --

17           MR. HALLORAN:  Yes.  Yes, your Honor.

18           THE COURT:  -- at the same time they were representing

19   or weren't representing --

20           MR. HALLORAN:  Your Honor, I think it is fair to say

21   that communications between Sullivan & Cromwell and the SEC are

22   not subject to privilege, at least not from the SEC's

23   perspective.  In other words, we are not claiming privilege

24   there.

25           THE COURT:  I agree and think everybody would agree

N3N5secC

1    with that but that isn't what your adversary is talking about.

2    He says that in the course of the negotiations on behalf of

3    Allianz that Sullivan & Cromwell gave you a package of stuff

4    that had been secret as between it and Tournant, and that they

5    knew -- they, the SEC -- knew was secret material and they

6    welcomed it and operated with it.  I'm not sure anybody would

7    say that was wrong.  It depends very much on what they did know

8    about its nature as being secret.

9          MR. HALLORAN:  I think I would agree with that, your

10   Honor.

11         THE COURT:  But, in all events, my question is now

12   that the war there is over, is there any justification in not

13   making that information public, whatever it is, as far as the

14   SEC is concerned.

15         MR. HALLORAN:  Well, I want to distinguish between two

16   things and that is public versus what we would give them in

17   discovery, because we, in the course of this investigation, we

18   obtained documents from, I think, roughly 40 different --

19   roughly -- 40 different entities and those entities have an

20   interest in their documents remaining, what I will call,

21   non-public.  I can give it to my adversary in litigation under

22   protective order, that shouldn't pose a problem, however I

23   think that is different from being public out in the world

24   where anyone can read it.

25         THE COURT:  I think what you are really saying is it

N3N5secC

```
1    depends on the nature of the information.

2              MR. HALLORAN:  That's fair, your Honor.  That's fair.

3              THE COURT:  Well, I will be interested in the nature

4    of the information.  It seems to me this is all going to be a

5    lot clearer within the next month.

6              Are you in a position to protest that you are harmed

7    by delay?

8              MR. LEVINE:  I believe, your Honor, that having the

9    information sooner would be very beneficial to us, but --

10             THE COURT:  I beg your pardon.  I meant to say, are

11   you in a position to say that you will be harmed by the delay?

12             MR. LEVINE:  The only harm is that in the criminal

13   proceeding this is information I don't have --

14             THE COURT:  Can you answer yes or no, and if you are

15   in that position, then state to me what the harm is going to

16   be.

17             MR. LEVINE:  Yes and yes.

18             THE COURT:  OK.

19             MR. LEVINE:  The answer is it is not related to this

20   matter, but there is a hearing in the criminal case where some

21   of these issues are raised.  We would like to have the

22   information to know what it is, if we get it there or here.

23   But, for this proceeding will we be harmed in the next 30 days?

24   No.

25             THE COURT:  OK.  Well, I think that draws the
```

N3N5secC

1   difference between the two cases.

2          MR. LEVINE:  Yes, sir.

3          THE COURT:  Which is exactly what it should do.

4          MR. LEVINE:  May I make one other point though, your

5   Honor, which I think is important?

6          The government, the U.S. Attorney's office here, has

7   done what most parties do in this situation when there is a

8   potential privilege issue, they created a filter team, to

9   gather any potentially privileged matter and do that.  So, when

10  the Court has asked about things becoming public, I don't know

11  what the SEC has or has not done, but in any case we contend

12  that this material is privileged; to the extent it was

13  disclosed it was improperly disclosed, it should not be

14  disclosed to anyone but us, and in fact in the criminal

15  proceeding the U.S. Attorney's office has a filter team that

16  has clawed back this information.  And to the extent it has

17  been presented to the Court, it has only been done under seal

18  and there has been a back and forth about what materials has to

19  be sealed.

20         So, I don't want the record to be unclear and

21  Mr. Halloran said this in a different way, that it is our

22  position that this information should not be known to anybody

23  besides Mr. Tournant and his counsel, and so to the extent the

24  SEC has it, they certainly can provide it to us but it should

25  not be provided to anyone else.  In fact, people at the SEC

N3N5secC

1    shouldn't have access to it at all except whatever filter team

2    they've set up because that's the process that usually happens.

3    That is certainly the process the government is currently

4    following.

5         I know the Court said there is no reason it should be

6    withheld from us but there is good reason our privileged

7    information, in fact our whole objection --

8         THE COURT:  Again, it comes down to what is the nature

9    of the information.

10         MR. LEVINE:  Yes, sir.

11         THE COURT:  Sure.  Well, I think that in the obvious I

12    think that we put it on ice here until the ice melts in the

13    next 30 days.

14         MR. LEVINE:  Thank you, your Honor.

15         THE COURT:  Good.

16         MR. LEVINE:  Can I raise one other issue?

17         THE COURT:  That means that with the exception of

18    depositions, it means you don't know if you want to take the

19    depositions or not.  I think perhaps better to hold off on the

20    depositions, too, let the situation clarify itself.  I think

21    everybody will know a lot more when the criminal case matters

22    with these issues is clear.  It may not be used in this case

23    but at least the situation will be a lot clearer than it is

24    this afternoon.

25         MR. LEVINE:  If I understand you, your Honor, you just

N3N5secC

1   want to keep the date, the June 5 date as it is?  Is that what

2   the Court is saying?

3            THE COURT:  I think so.

4            MR. LEVINE:  I see.

5            THE COURT:  Yes.  A month, June 5 is a little far out.

6   We probably could discuss this in a month from now more

7   intelligently than we are able to do this afternoon.

8            MR. LEVINE:  Thank you, your Honor.

9            THE COURT:  And we can do that perfectly well.

10            MR. LEVINE:  Fine, your Honor.  Thank you.

11            THE COURT:  OK.

12            MR. LEVINE:  Your Honor, can I just ask --

13            THE COURT:  But in the meantime, I would hold off on

14   the depositions.

15            MR. LEVINE:  Yes, your Honor.

16            With respect to just putting this privilege issue to

17   one side we would like, because as Mr. Halloran pointed out,

18   there are a lot of parties here and third-parties.  We would

19   like the ability to start serving additional requests unrelated

20   to the privilege issue, really, to the substance of the case,

21   sooner rather than later.  One of the reasons we agreed to the

22   June 5 date for other things was because there are going to

23   be -- there is an enormous amount of material here that we are

24   going to have to ingest and to get.  Now, for some of it,

25   especially with third-parties, there will inevitably be the

1    need to negotiate and the need to work through things, so we

2    would like to begin to start sending out requests, to send

3    formal requests to the SEC for the materials we want from them

4    just because there are a lot of -- it is going to be a

5    complicated process.  In fact, for many depositions I don't

6    think they will happen anywhere near June 5 and we won't have

7    the materials in time.  So, we would like to be able to start

8    serving document requests and subpoenas earlier than April 7th.

9             THE COURT:  Well, what it says in my draft of the

10   order is depositions of fact witnesses including non-parties

11   and there is no reference to privilege issues in that

12   description.  And then, Tournant's proposal says no earlier

13   than June 5, except for privilege issues.

14            Has that changed?

15            MR. LEVINE:  No, your Honor.  I am sure I didn't

16   communicate clearly.

17            I was referring to the previous box relating to just

18   written discovery, document requests, and the like.  The SEC

19   had asked that we not be able to serve those things until April

20   7th, we had actually asked to be able to serve them earlier so

21   we could get going.  This relates to just the general requests

22   we are going to be making to the SEC and to third-parties, just

23   because of the amount of material we wanted to get started on

24   that, the SEC preferred to wait until April 7th.  That is what

25   I was referring to.

N3N5secC

1          THE COURT:  Well, the document merely says that your
2    proposal is merely no earlier than March 16.
3          MR. LEVINE:  That's correct, your Honor.
4          THE COURT:  It doesn't say but earlier than April 7.
5          MR. LEVINE:  So we would be able to serve --
6          THE COURT:  You are now saying you would like it
7    earlier than April 7?
8          MR. LEVINE:  Well, we were saying that we couldn't
9    serve them earlier than March.
10          THE COURT:  I see that.
11          MR. LEVINE:  So we would, for example, be able to
12    serve them now and not wait until April 7th.
13          THE COURT:  Well, that isn't what that says.
14          MR. LEVINE:  OK, your Honor.  I don't understand how
15    you are reading it, I must be misunderstanding you,
16    respectfully.
17          THE COURT:  "No earlier" means not before.
18          MR. LEVINE:  Right, and it is now March 23, so it
19    would not be earlier than March 16, so I could serve them now.
20          THE COURT:  Well, but that doesn't address the SEC
21    proposal which is no earlier than April 7.
22          MR. LEVINE:  That's right.  That's the disagreement.
23          THE COURT:  You don't object to that in this document.
24          MR. LEVINE:  Well, we put in competing proposals.  We
25    were saying March 16, and what we intended to do and if we did

N3N5secC

| | |
|---|---|
| 1 | it unclearly I apologize to the Court, but the government was |
| 2 | saying -- excuse me the SEC was saying it should be no sooner |
| 3 | than April 7; we were saying no sooner than March 16.  That was |
| 4 | the dispute we were bringing to the Court. |
| 5 | THE COURT:  Implying that you could do it on the 17th. |
| 6 | MR. LEVINE:  Yes, sir. |
| 7 | THE COURT:  Implied but not stated. |
| 8 | MR. LEVINE:  Apparently not, and we apologize for the |
| 9 | confusion. |
| 10 | THE COURT:  Apparently not.  Well, it is not a matter |
| 11 | of speculation, that's what it says. |
| 12 | MR. LEVINE:  All righty, your Honor. |
| 13 | THE COURT:  Why do you want to hold it until April |
| 14 | 7th? |
| 15 | MR. HALLORAN:  That's fine, your Honor. |
| 16 | THE COURT:  It is only two weeks. |
| 17 | MR. HALLORAN:  Understood.  As a practical matter they |
| 18 | already served it so it is fine, it is fine. |
| 19 | MR. LEVINE:  Thank you. |
| 20 | THE COURT:  OK.  I think what I will do with this, |
| 21 | since we are all here and can change it if it isn't clear, the |
| 22 | last date in this set of boxes, well, that holds it until the |
| 23 | end of the criminal case. |
| 24 | MR. LEVINE:  Respectfully, your Honor, it actually |
| 25 | continues on the next page, there are some other boxes as well, |

N3N5secC

1   which we also -- we all thought --

2                THE COURT:  Yes, I noticed that.

3                MR. LEVINE:  So we all thought, collectively, having

4   all considered the position that, as you said when we first

5   came out, that we are trying to do this sensibly and it was not

6   sensible to try to set those dates --

7                THE COURT:  Oh, I agree.  I think for the purpose of

8   the wording of this order, the best thing for me to do is leave

9   that box, I'm now talking about fact witnesses including

10  non-parties and the portion that says depositions concerning

11  privilege issues which may begin earlier, I think we should

12  leave it open that they may, indeed, begin earlier.  We just

13  don't know that at this point and I think I will sign it in its

14  present form for that reason.

15               MR. LEVINE:  Thank you, your Honor.

16               MR. ALONSO:  Will you alter the previous box about the

17  document request, your Honor?  You said you would sign it in

18  its present form.

19               THE COURT:  No, I was looking at depositions, the box

20  with the depositions.

21               MR. LEVINE:  I think what Mr. Alonso was pointing out

22  is given the statement by learned counsel that we can cross out

23  the April 7 line and just leave this and we have agreed to

24  that.  That's what we just heard a moment ago.

25               MR. ALONSO:  That's what I was pointing out.

N3N5secC

1              THE COURT:  Does that resolve it.

2              MR. HALLORAN:  I think with respect to the document

3    request box, yes.  You can just go with the Tournant proposal.

4              THE COURT:  Take out the SEC proposal?

5              MR. HALLORAN:  Sure.

6              THE COURT:  Let the calendar solve it.

7              MR. HALLORAN:  Yes.  Yes.  In other words, they can

8    serve them, as of now they can serve document discovery.

9    That's fine.

10             THE COURT:  Yes.

11             MR. HALLORAN:  And with respect to depositions, your

12   Honor, I just wanted to make sure I understood your comments.

13   I thought you had said earlier that depositions would begin on

14   June 5.  I just want to make sure that I understood that

15   correctly.  On or after June 5.

16             THE COURT:  Are you talking about the box that says

17   depositions of fact witnesses?

18             MR. HALLORAN:  Yes.

19             THE COURT:  Non-parties.

20             MR. HALLORAN:  Yes.

21             THE COURT:  My solution to that was to leave the

22   language exactly as it stands because the working part of it is

23   the one concerning the privilege issues, and all it says about

24   that is no earlier than June 5, except for those which may

25   begin earlier.  And, indeed, I think we all agree that it may

N3N5secC

1    turn out that they begin earlier but we will know that much

2    more after Judge Swain makes a ruling on the cousin questions

3    before her.

4              MR. HALLORAN:  Understood.

5              THE COURT:  So we will just leave it open as a

6    possibility.

7              MR. HALLORAN:  All right.  Thank you.

8              THE COURT:  Open earlier than June.

9              MR. HALLORAN:  OK.  Thank you.

10             THE COURT:  Under the defendant's relentless pressure

11    to get to trial earlier.  An unusual position for a defendant

12    but not anything foolish about it.

13             OK, then I will sign this the way it stands.

14             MR. LEVINE:  Thank you, your Honor.

15             THE COURT:  We will put it on the ECF so you will get

16    it all.

17             MR. LEVINE:  Thank you, your Honor.

18             THE COURT:  Thank you all very much.

19             MR. LEVINE:  May I raise one final issue, your Honor?

20             THE COURT:  Yes.

21             MR. LEVINE:  I'm sorry to test the Court's patience.

22             The complaint in this matter has many anonymized

23    terms.  Instead of saying somebody made a statement to

24    Mr. Jones, it says somebody made a statement to an investor,

25    and so we don't know who these people are.  About a month ago,

N3N5secC

| | |
|---|---|
| 1 | at the SEC's request, we sent them a list of all of the terms |
| 2 | in the complaint that we don't know for sure who the people |
| 3 | are.  We can guess, but we don't know.  It would be very |
| 4 | helpful, we would hope the SEC was going to respond because |
| 5 | they asked us for this.  Just to be able to read the complaint |
| 6 | and know who we are talking about, it would be very helpful if |
| 7 | the SEC would provide that information, especially as we go |
| 8 | into trying to prepare discovery demands and things.  I think |
| 9 | that they were planning to do it but they haven't and it has |
| 10 | been a month, so we are wondering if the Court might assist us |
| 11 | in this matter. |
| 12 |             THE COURT:  I take it that you are asking for their |
| 13 | names. |
| 14 |             MR. LEVINE:  Yes. |
| 15 |             THE COURT:  It could have been done more briefly. |
| 16 |             MR. LEVINE:  Yes, your Honor. |
| 17 |             THE COURT:  Can you give him the names? |
| 18 |             MR. HALLORAN:  Yes, we can your Honor. |
| 19 |             THE COURT:  OK. |
| 20 |             MR. HALLORAN:  I can get it to him by the end of next |
| 21 | week.  Would that be acceptable? |
| 22 |             THE COURT:  You have to ask him, he is very difficult |
| 23 | to deal with. |
| 24 |             MR. LEVINE:  Now you hurt my feelings, your Honor. |
| 25 | That hurt my feelings. |

N3N5secC

1              THE COURT:  Good.  OK.

2              Thank you, all.

3                                    o0o

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25